The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Eugene G. Doherty presiding. Good afternoon. This is the 4th District Appellate Court calling case number 4-25-0269 Garmon v. Raoul. I'd ask, starting with counsel for plaintiff, that you please state your name for the record. Good afternoon, Your Honors. Chris Bendick for Jesse Garmon. And for the defendant? Mary Lebrecq for the defendant's appellees on behalf of the state, the Illinois Attorney General, and the Director of the Illinois State Police. All right, thank you. Just before we proceed, I want to make a disclosure. Sometimes judges get sued in ways that two lawyers would say, no, you can't sue a judge for that. That doesn't make any sense, but we sometimes do. When a judge gets sued, the Attorney General gets assigned to represent them when they're sued in their individual capacity. I believe there is a suit pending up in Boone County that I've been named as one of a long cast list of folks. And I'm making that disclosure, but I have reviewed the relevant Supreme Court rules of ethics, and I don't see that that's a for my disqualification, but I wanted to disclose that for the parties. Thank you, Your Honor. All right. Then, Mr. Bendick, you may proceed. May it please the court. Good afternoon, Your Honors and counsel. My name again is Chris Bendick, and I represent Jesse Garmon in the appeal from the circuit court granting the defendant's motion to dismiss Garmon's motion for declaratory judgment. In 2018, the Illinois Supreme Court made it clear to individuals like Mr. Garmon, the two options they have in order to challenge their SOAR requirements. One of the options was filing a motion for declaratory judgment. And in 2024, Garmon filed such a motion and asked the circuit court to conclude that as applied to Garmon in his circumstances, his SOAR requirements violated our state constitution's proportionate penalties clause. Garmon supported his motion with sufficient facts about the circumstances along with legal reasoning as to why the circuit court should conclude that Garmon's requirements were unconstitutional as applied to him. And in that motion, he asked for an evidentiary hearing. In response to the defendant's combined motion to dismiss Garmon's pleading, the circuit court short-circuited the appropriate process here and granted the defendant's motion to dismiss on several section 2, 615 grounds. The circuit court's ruling was an error where it was not clearly apparent that no set of facts could be proven that will entitle Garmon to relief. And because the circuit court's ruling was an error, this court should reverse the circuit court's dismissal of Garmon's motion for declaratory judgment and remand the matter for further proceedings. As to the specific... Mr. David, may I interrupt you to ask a question? Where this fell down, I believe, was on the determination that the regulations in question were not punitive. Even though this is an as-applied challenge, do you agree that they are either punitive in their scope or they are not? It doesn't matter. They're not punitive against one defendant and not against another. So our argument at this stage is that the circuit court did not give the due deference to the arguments that are out there that this is, in fact, punishment. There's well-established authority both out of this state. I know that there's been vacated authority. My question is, the answer to that question is going to be the same from one defendant to the next, whether they are intended as punishment by the legislature. Do you agree with that? Yes. The legislature didn't have you client in mind when... Yes. Yes. And so, turning back to the circuit court's ruling here in 2024, its opinion in subsequent order, the circuit court denied the defendant's combined motion on section 2619 grounds but granted it on several 2615 grounds. However, had the circuit court provided the proper deference, the circuit court should have denied the combined motion. As the first basis for its opinion, the circuit court found that it was valid. The defendant's argument that Garment had not set forth any facts to support a claim that Sora is unconstitutional as applied to him. However, Garment's complaint unambiguously asserts why factually Sora is unconstitutional as applied to him. After explaining why the underlying reasoning of the now vacated tether opinion from the third district still applies and should be adopted by the circuit court, Garment asserted why Sora's requirements are disproportionate to his crime and therefore unconstitutional. For example, Garment relied on his affidavit detailing the circumstances of a 1992 misdemeanor criminal sexual abuse case and why those circumstances demonstrate the disproportionality of his Sora requirements. Those allegations should have survived a 2615 motion and dismiss. Can we look at another part of tether? Yes. Which is, as you know, no longer, it no longer exists. But tether examined the question of whether these provisions are punitive and tether applied the test of first ascertaining whether the legislature meant to establish civil proceedings. If it meant to impose punishment, then the second step is unnecessary. But if the legislature intended a civil regulatory scheme, then the next step is to determine whether the scheme is so punitive, either in purpose or effect, as to negate the intention to call it civil. That's the test that you think leads to the conclusion that these provisions are not, are punitive. Correct? Get the Mendoza-Martinez test, Your Honor, yes. Well, that's the same test, albeit in the context of a different constitutional guarantee, but it's exactly the same test the Supreme Court came up with in cop. And it found that they were not punitive. So is that not foreclosed for us to disagree with that conclusion in the application of that test to these statutes? So to, in regards to this case, because this is coming up to you on a 2615 grant, okay, there must be all deference to all the arguments made on our side, since we're the non-moving- No, no, not to arguments. We assume the facts. We don't, we don't give deference to arguments. And, and, and as we established at the beginning, this is a, an answer that is not particular to your client, whether these are punitive. The Supreme Court applying the same test that you think we should apply says they are not punitive. How is there even a factual issue for the trial court to avoid or to, or to defer to? So in this case, in cop, while the Illinois Supreme Court, when analyzing the ex post facto challenge there, found it to not to be punishment. However, it did not analyze what, and as your Honor referred to, the tether, now it's vacated, of course, but in that case, it relied upon the Sixth Circuit decision, the Snyder case. Right. Here's where we have a problem. In the interpretation of the Illinois proportionate penalties clause, the Sixth Circuit is like a law review article, right? The Illinois Supreme Court is the top of the food chain and it said not punitive. And in regards to the ex post facto challenge, correct, your Honor. But applying the same test at the front end as to deciding if it's punitive, they, the Supreme Court said these provisions are not punitive. And the issue with the cop and its applicability to this case is that it did not analyze the arguments that were presented in Snyder. And in fact, what was discussed, and obviously now vacated tether opinion, but it's still present in the dissent in Kochevar in 2020. Those arguments were not analyzed by the Illinois Supreme Court and cops. So we're putting the cart before the horse here, because there is a set of facts and law that if applied to Garmin would provide him for relief. That's why we're way beyond where we should be right now. The Circuit Court should not have granted this motion of dismissal, should have denied it, should have heard all these arguments. And then if it came to the conclusion that your Honor's hinting at, then we'd be in a more position here, I think. But 615 is an appropriate place to make a conclusion of law. And, you know, based on uncontested facts or facts assumed, there are no facts that you've pointed to that would change the answer to the question of law. Well, on the question of law, I do think that it's an open question based on those arguments that are clearly laid out in all the other authority. And as you say, persuasive, it is not binding. However, those arguments and let law is out there. In general, you will not see the appellate court tell the Supreme Court, well, your analysis wasn't quite right, because you didn't think of some things that should have been considered. That's typically not in our quiver. And, and in that situation, the appellate court or the circuit court, what they should say is, we recognize the cop opinion is out there, we recognize that that's in fact, possibly controlling on us. However, we would adopt the reasoning that has been presented before. In fact, that's what happened in Tedra and Kochevar, because in Tedra and Kochevar, they thoroughly went through the prior Illinois Supreme Court authority on the subject, saying it's clearly punishment and not punishment by the prior authority. However, there's been changes to the statute, and it makes it punishment now. And in fact, if that's what occurred here, that would be the argument to be adopted both by the circuit court and this court. How is this case different in terms of punishment? How those changes in the statute make as applied in this situation, more of a punishment? Well, for two aspects, you know, in general, as Justice Doherty, you know, recognizes, there's, there's the at large punishment for everyone, right, that this SOAR requirements applies to everyone. And I think that, you know, I'm not going to have the time, or the knowledge to go all the stuff that is listed in Tedra and Kochevar and Snyder. But those cases go through the changes in the statute that when SOAR was originally enacted, to the 2011 amendments, and all these new regulations that make it more of a punishment scheme. But in specific to Garmin, it's disproportionate based on his misdemeanor. You don't get to that point, unless it's punishment. So you want to go to the disproportionality. And you've got to first establish that what's disproportionate is punishment. Right, Your Honor, I was trying to just answer Justice Kavanaugh. And it's a bifurcated analysis, because as you recognize, it has to be punishment first. And if we establish that at least there's an argument that it's punishment, that as applied to Garmin, it's a punishment based on the facts of his 1992 misdemeanor criminal sexual abuse, which was the result of a consensual boyfriend-girlfriend relationship. It was a misdemeanor crime back then. It's still a misdemeanor crime now. It was not registration eligible in 92. It became registration eligible in 2011, when the statute was changed and moved in a bunch of retroactivity stuff. But as to Garmin's facts, it is a disproportionate punishment to require him to register for 10 years in all the intended circumstances that come with such a registration. That is the disproportionate punishment, should this court conclude that there is an argument that it is a punishment. Just to address two of the other basises for the, well, I think we've thoroughly discussed the punishment aspect of it. So I'll avoid any more of that, unless Your Honor has any questions as to that. You agree, don't you, that COPF, it was a motion to dismiss for failure to state a claim and the Supreme Court decided that it didn't state a claim because it was not punitive. So 615 was an appropriate vehicle for that determination. In COPF, however, they also remanded the case for further as applied challenge to the statute, Your Honor, for an evidentiary hearing. So in fact, did not grant the 615 in full. And turning back to the other basis for the circuit court's ruling here, it said that the defendant's argument in favor of the continued requirement to register under SORA is valid as argued in its memorandum in support of the defendant's combined motion to dismiss. But of course, his 2020 felony conviction for leaving his address for a few days did not cause Garman to register. The registration occurred in 2012. That only extended his registration for 10 years post his release in 2022. So that was not a valid basis for granting the state's motion to dismiss. And as the plain language means that there is a singular case of registration, the circuit court erred there. We've discussed the punishment aspect of this. And again, as the reasoning of the cases that do establish that this is punishment and not a mere collateral consequence, the defendant's section 2615 motion to dismiss should have been denied on that basis. Again, COPF did resolve and affirm the dismissal of proportionate penalties. I'm sorry, the ex post facto claim on the basis that it was not punitive. What was remanded were other constitutional claims that didn't depend on that punitive predicate. And again, those paragraphs 92 to I believe 112 of COPF don't analyze any of the further insight since they represented the state in the COPF matter as to the briefing. But I believe COPF was a pro se litigant before the Illinois Supreme Court. I'm not sure what arguments. I could not determine that from my Westlaw research, what was in the briefs, if this was the Snyder arguments that were adopted by Tedra and Kochevar. They were presented in full to the Illinois Supreme Court. But at least based on that existing case law, we believe that the 2615 motion was incorrectly granted here and this court should remand further proceedings on Garmin's motion for declaratory judgment. If your honors have no further questions, we ask that relief from the briefs and reserve a remainder of our time in rebuttal if we need to. All right, thank you, counsel. You will have five minutes in rebuttal. Ms. Labrie, you may proceed. Good afternoon, your honors. Counsel, may it please the court. This court should uphold the dismissal of Garmin's action because he failed to state a claim for relief. As your honor noted, to state a claim for violation of his rights under the Proportionate Penalties Clause, a plaintiff must adequately allege two things, that the statute or statutes imposed punishment and that the punishment imposed was disproportionate to the circumstances of this case. And as your honor also noted, the question of punishment is dispositive here because the Illinois Supreme Court's recent decision in Coff held that the current version of the SORA statutes does not impose punishment. Unlike the two cases that Garmin relies on, and Doe versus one to five, Coff is binding on this court and Garmin has no way to escape the scope of its ruling. Is it binding because the Supreme Court was dealing with a different constitutional guarantee? We do not think so. First of all, it makes sense as a matter of interpretation to construe the same words, punishment and penalty, the same way for these related provisions in the same constitutional text. And it seems that the case law agrees. For example, the cases that we cited in our brief on page 15. Moreover, Garmin cites no authority suggesting that punishment means something different in these two contexts, nor does he suggest any reason and logic why this court should so construe it. And finally, and ironically, he urges this court to rely instead on Doe's one to five versus Snyder. And that decision is itself based on the ex post facto clause rather than the proportionate penalties clause. And he is mistaken in saying that the Coff decision is invalid because it didn't consider the arguments made in Snyder and Tedder. It is true that the court did not specifically address either the Snyder or Tedder decision, but it did discuss each of the Mendoza-Martinez factors applied in those cases and came to an opposite conclusion on each one. It specifically held in contradiction of Tedder that the store restrictions did not place an affirmative disability or on offenders, did not resemble historical punishments such as public shaming, banishment, probation, or supervised release, were not intended as retribution, had a rational non-punitive purpose of protecting public safety, especially keeping children safe from predators, promoted that purpose through reasonable methods, and were not excessive in view of that purpose. Moreover, he doesn't point to any restriction that applies to him that Coff did not consider. There is one statute mentioned in his complaint, and it was also mentioned in Tedder that was not mentioned in Coff, which is the provision about name changes. But he is mistaken at the extent he argued in his complaint that it would prevent him from ever changing his name, because this is not true of the current statute. It only prevents offenders from changing their names during the periods they're required to register, and even then there are certain exceptions to the rule. Moreover, he does not, this does not allow Darman to avoid Coff because he makes no argument about why addition of this statute should render Sora punitive. And even if it did, he does not explain why it affects him personally or why it rendered the penalty disproportionate. This court could end its analysis right here, and affirm the court's dismissal of this action, because, as Rana noted, there cannot be a proportional penalties violation if Sora is not punishment. But Darman's arguments that the restrictions are disproportionate to his offense are equally flawed. He argues, in effect, that this case is just like Tedder, but there are differences. Not least the fact that Darman was placed on the registry for only 10 years instead of a lifetime, and that he had a greater opportunity to rehabilitate himself, because the 10-year term did not start until he committed a subsequent felony. Thus, he could have avoided being placed on the registry at all by avoiding further violation of the law, whereas the defendant in Tedder was placed on the registry for a lifetime as soon as he committed his sexual offense. And even Darman admits that his penalty was less disproportionate than the penalty in Tedder, so even if this court found Tedder persuasive, it would not follow that Darman's lesser penalty was so disproportionate as to rise to the level of a constitutional violation. Now, Darman also contends that the lesser severity that his offense was less severe than the offense in Tedder, but that is because he misunderstands the nature of the offense. The offense that is to be compared with the severity of the penalty in this case is the one that triggered his placement on the register. If placement on the register is analogized to a criminal penalty, then the actions that gave rise to that penalty correspond to the criminal offense. Accordingly, the offense in this case has two predicates and not one. Darman's offense relative to Sora was not complete until he had two criminal convictions. His original sex offense and the subsequent felony. So both convictions must be considered part of his offense. And his subsequent felony conviction for aggravated domestic battery in 2012 was a class two felony, just like Tedder's conviction for aggravated criminal sexual abuse. So Darman's offense was necessarily more serious than Tedder's. Moreover, Darman had none of the aggravating circumstances. The defendant in Tedder was evaluated and found to be at virtually zero risk to re-offend. Darman had no such evidence. And while an offender's judgment may mature over time, Darman's extensive criminal record shows that his did not. Moreover, his record showed acts of violence like domestic battery and aggravated battery, and possibly including violence such as mob action and resisting arrest. He also had convictions for drug and weapons related charges. And he admitted at his 2012 sentencing hearing that he'd been diagnosed with bipolar disorder, which represents an additional risk. Whereas Tedder had no prior criminal convictions apart from minor traffic violations and no underlying mental health or substance abuse concerns. Tedder also had the excuse of youth for his triggering offenses. Whereas Darman did not, at least not entirely. He committed his first offense at the callow age of 20, but he was about 40 when he committed his subsequent felony. Also, the court found that the defendant in Tedder believed his victim to be 18 when he first began having sex with her. But Darman has never suggested that he did not know how old his victim was. And if he did, it is likely that the state court would not have believed him given that he was living with the girl and her mother at the time. Now, leaving Tedder aside and evaluating Darman's compound offense as an original matter, his argument fares no better. According to people of E. Hilliard, a statute will violate the proportional penalties clause of the Illinois Constitution if it either imposes a penalty that is harsher than the penalty for an offense with identical penalties, I mean identical elements, or if the penalty is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense in the community. Since Darman has identified no offense containing identical elements that is given a harsher penalty, this court must apply the latter test. It is satisfied primarily by reviewing the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency. And under this standard, it is equally clear that there was no constitutional violation. There is nothing especially harsh, degrading, cruel, or shocking about imposing a 10-year term in the registry on Darman under the circumstances. His criminal record showed at the time that he was placed on the registry that he had often been either unable or unwilling to conform his conduct to the law over a period of many years, and that he could be violent with females to whom he had access. The aggravated domestic battery in 2012, for instance, was committed against a woman who was living with him. Now, to be sure, his criminal record does not suggest that he was the worst of the people that may possibly be covered by the statute. There is nothing to suggest that he was a serial predator who dedicated his time to cruising for minors, but it does suggest that the state was justified in keeping them away from him because he was likely to take advantage of the situation if he had access. There may be certain situations in which placement of the offender on the registry for a youthful sexual offense and a subsequent felony would be disproportionate, but it is certainly not disproportionate as applied to Darman under the circumstances reflected here. And even Tedder seems to hint as much where it acknowledges that the restrictions imposed by the statutes may present fair and just punishment in many or most cases. And there is no question about whether the statutes accurately reflect concerns about recidivism. He argues that he had only one sex offense, but Sora takes the view that other crimes may reflect a general tendency to recidivate. It doesn't require that the subsequent felony would be another sex offense because other crimes may be like comorbidities in the sense that they help predict risk. And a statute cannot be deemed punishment on the ground that it isn't tailored enough toward its goals. It need only have a rational basis. And by the same token, this court cannot conclude that Darman is not dangerous for purposes of proportionality analysis just because he did not have a second sex offense. We do not even know that he didn't commit one. We know only that he was not convicted for one. Well, if we don't know that he was not convicted of them, I mean, that's true of all of us, right? Yes, I'm not saying that we rely upon that. I'm sorry. It's a little bit of an overreach to say, well, you know what, he could have had another sex offense and just not been convicted of it. That's a little bit beyond the pale. That's true of anybody who walks into the courtroom, including the person with the robe. So it just doesn't do your argument well to talk about uncharged crimes, unalleged crimes, as opposed to what's here on the record. I didn't mean to suggest that that was a major part of that argument. I don't think we need it in light of every other argument that we've presented here. I was just mentioning that because he says it's an affirmative thing. The evidence shows he did not commit a second offense. And I'm just saying, we don't know that. But the case was decided on a motion based on the facts that's pleaded, and that wasn't one of them. Right. Well, okay, as I said, I don't think we need that. We need that argument for the reasons based on the other arguments that we've made. So if your honors have no further questions, I guess we will urge this court to affirm the circuit court's judgment dismissing Garman's action for failure to state a claim for relief. All right, thank you. And to rebuttal with Mr. Bendick. Just briefly, your honor, should this court conclude that, you know, that there is an argument to be made as to punishment, that Sora is punishment, it is of course disproportionate based on the facts that are pledged in the motion for declaratory judgment toward Mr. Garman. If the state wants to argue about how Garman is a repeat sex offender without any evidence, they should do that in the circuit court, not before this court. But we've thoroughly gone through that in our reply brief, that this is a disproportionate punishment based on a consensual relationship between an emerging adult and a teen that he you know, this was a consensual relationship based on the facts in the motion for declaratory judgment. The state has assumed those facts as your honor has identified. If you can't contest it now in the appellate court, the place to do that is the circuit court. And of course, it should shock the moral sense of the community that a 20 year old who had a consensual relationship with his girlfriend has to register for 10 years and all the attendant circumstances that come with such registration. It's ridiculous, frankly, if this court concludes this punishment is, and it's, it's, you know, there's might be a circumstance where misdemeanor criminal sexual abuse is a valid, proportionate punishment, but not in this case. Garman should not have if this court concludes that at least arguably, and I know that's a criminal law term, you know, arguable basis, you know, first stage Hodges stuff, but you know, there's an argument here that this is punishment. This court should remand the case for further proceedings on the motion for declaratory judgment. And with that, we rest on the arguments that were presented in our briefs and thank you for your time today. And thank you to both council court. We'll take the matter under advising advisement, issue a decision in due course, and we now stand in recess. Thank you.